SO ORDERED: June 22, 2012.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SAINT CATHERINE HOSPITAL ) | |
| OF INDIANA, LLC ) | CHAPTER 11 |
| ) | |
| Debtor ) | CASE NO. 12-91316-BHL-11 |
| ) | |

**INTERIM ORDER GRANTING EMERGENCY MOTION FOR AUTHORITY TO INCUR SECURED DEBT WITH PRESIDENTIAL HEALTHCARE CREDIT CORPORATION, TO USE CASH COLLATERAL, AND TO PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. SECTIONS 363 AND 364**

\* \* \* \* \*

On June 21, 2012, the Court conducted a preliminary hearing on the Emergency Motion for Authority to Incur Secured Debt with Presidential Healthcare Credit Corporation, to Use Cash Collateral, and to Provide Adequate Protection Pursuant to 11 USC Sections 363 and 364 (the "Motion") filed by Saint Catherine Hospital of Indiana, LLC, as debtor and debtor-in-

1

possession (collectively, the "Debtor"), seeking, inter alia, pursuant to Sections 105, 361, 364(c)(2) and (d) and 363(c) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following:

    (a)    use of the Cash Collateral on the terms provided herein;

    (b)    granting of adequate protection to Presidential Healthcare Credit Corporation ("Presidential") to the extent provided herein; and

    (c)    authorizing Debtor incur secured debt with Presidential.

In connection with this request, IT IS HEREBY **FOUND** that:

    (a)    On June 19, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

    (b)    The Debtor has a revolving loan with Presidential. Its current arrangement is governed by that certain Revolving Credit and Security Agreement executed on March 31, 2009, as amended by that certain Loan Modification Agreement and Amendment to Loan Documents dated March 31, 2011 ("Loan Agreement") by and between Debtor and Presidential. Pursuant to the Loan Agreement, Presidential loans money to the Debtor on a revolving basis. The Account Debtors and the Debtor deposits funds in a lockbox account with New Washington State Bank (the "Lockbox Account"), which daily are turned over to Presidential. Presidential funds a percentage of the face amount of eligible receivables (the "Eligible Receivables") to Debtor. In addition, Presidential has a properly perfected security interest and right of contractual set-off on, among other things, the Debtor's cash collateral to secure amounts owed by Debtor under the Loan Agreement subject only to the limited lien of Amerisource (as herein defined).

Presidential's security interest in the Collateral (as defined in the Loan Agreement) is properly perfected by the UCC-1 financing statement filed with the Delaware Secretary of State on April 9, 2009 (Initial Filing #2009 1145256). At the time of the bankruptcy filing, the obligations of the Debtor to Presidential under the Loan Agreement were approximately $446,000.

(c)     Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. New financing facilities are unavailable to Debtor without Debtor and/or this Court granting to Presidential a security interest pursuant to the Loan Agreement of the Cash Collateral Receivables and the granting of a continuing security interest and lien (which assignment and lien shall be a second priority security interest and lien as provided herein) in all of the Cash Collateral Receivables in accordance with the Loan Agreement (such financing, the "Financing") and pursuant to Bankruptcy Code Section 364 (c).

(d)     The entry of this Order (a) will minimize the disruption to Debtor's business that would otherwise result from the filing of the petition commencing Debtor's Chapter 11 case (the "Chapter 11 Case") and will enhance the likelihood that Debtor will maintain patient care levels, (b) increase the likelihood that Debtor will be reorganized pursuant to the Bankruptcy Code, (c) is in the best interests of Debtor, its creditors, and their estates, and (d) is necessary to preserve the assets, businesses, goodwill, and reputations of Debtor.

(e)     The Loan Agreement has been negotiated in good faith and at arms-length between Debtor and Presidential and any credit or funds extended or paid to Debtor by Presidential pursuant to the Loan Agreement shall be deemed to have been extended in good faith, as that term is used in Bankruptcy Code Section 364(e).

(f)     This Court finds that Presidential is not willing to provide the Financing unless Presidential has a second priority security interest in and lien on the Cash Collateral Receivables as security for the amounts owed under the Loan Agreement.

(g)     The Debtor and Presidential have represented to the Court that they have negotiated and agreed in good faith to the terms and conditions of this Interim Order Granting Emergency Motion for Authority to Incur Secured Debt with Presidential Healthcare Credit Corporation, to Use Cash Collateral, and to Provide Adequate Protection Pursuant to 11 USC Sections 363 and 364 (the "Interim Order"). Counsel to the Debtor has certified that on June 19, 2012, notice of the Motion was given to (a) the United States Trustee for the Southern District of Indiana; (b) Presidential; (c) other secured creditors of Debtor; and (d) the parties listed on the Debtor's List of Twenty Largest Unsecured Creditors.

The parties have stipulated and agreed as follows, and based upon the pleadings, evidence, and representations of counsel, the Court hereby approves and adopts said stipulations and agreements as stipulations and conclusions of law, as appropriate, and grants the relief requested herein effective as of the Petition Date, *nunc pro tunc*, and orders:

## Jurisdiction

1. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §§157(b)(2)(A), (D), (G), (K), (M) and (O).

## Notice

2. Sufficient and adequate notice of the Motion and the hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules

4

2002, 4001(b), and 9006, and as required by Section 102, 361, 363 and 364 of the Bankruptcy Code.

**Consent to Use Cash Collateral and To Incur Secured Debt**

3. IT IS HEREBY **ORDERED** that:

    a. the Motion is granted on an interim basis, subject to the terms and conditions set forth in this order;

    b. that the Debtor is immediately authorized upon signing of this order to borrow pursuant to the Loan Agreement up to an aggregate principal amount of up to $1,500,000.00, and to pay the fees, charges, costs (including reasonable attorney fees), discounts and interest as set forth in the Loan Agreement.

    c. Debtor is authorized and empowered to enter into, execute, deliver and perform under the Loan Agreement and all other agreements, instruments, notes and documents as Presidential may reasonably deem appropriate to accomplish, effectuate, and/or evidence the lending under the Loan Agreement (collectively, the "Loan Documents") and each and every term contained herein, and all obligations incurred thereunder are approved. The terms and conditions of the Loan Documents are hereby approved, and Debtor is authorized to execute, deliver, and perform, and do all acts that may be required in connection with, the Loan Documents. The Loan Documents shall constitute valid and binding obligations of Debtor, enforceable against it in accordance with their terms and shall continue to govern the Debtor's relation with Presidential in all respects except as expressly ordered otherwise by the Court. Debtor is authorized to

5

perform and comply with all acts that may be required under the terms, intent and purpose of the Loan Documents.

d.  As security for the Debtor's payment and performance of all of the obligations of the Loan Agreement and the Loan Documents, and pursuant to Bankruptcy Code Sections 364(c) and (d) and in fulfillment of Debtor's agreements under the Loan Agreement, Presidential hereby is granted (effective immediately and without the necessity of execution by Debtor or security agreements, financing statements, or otherwise) (i) a valid, enforceable, attached, and automatically perfected assignment of and security interest in and lien on all of the existing and hereafter acquired right, title, and interest of Debtor in and to the Cash Collateral Receivables, subject only to the security interest in and lien on all of the Cash Collateral Receivables held by Amerisource Bergen Drug Corporation ("Amerisource") provided however that notwithstanding anything to the contrary herein, Amerisource's priority over Presidential in the Cash Collateral Receivables and other collateral securing the indebtedness owed by Debtor to Presidential shall not exceed $30,000.00 at any one time; (ii) an allowed administrative expense claim pursuant to Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code for the amount of any Cash Collateral Receivables and to the extent which Debtor uses the Cash Collateral with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against Debtor, now existing or hereafter arising of any kind whatsoever; and (iii) any property of the Debtor's estate that is not otherwise subject to a lien in accordance with Section 364(c)(2). Presidential's liens shall

be valid, enforceable, attached, and perfected as of the Petition Date without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, possession or other act. Notwithstanding the foregoing, Presidential shall, if it elects to do so in its sole discretion, be authorized to file, record or otherwise take any steps to effectuate perfection.

   e. Except for the lien held by Amerisource whose priority is limited herein, Presidential's liens shall be senior to and shall not be subordinated or made equal to any lien, security interest, mortgage or any other interest in favor of any party by any order of the Court or otherwise.

   f. Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents and to pay fees that may be required or necessary for its performance under the Loan Agreement.

   g. The automatic stay created by Bankruptcy Code Section 362 hereby is modified and vacated to the extent necessary to permit Presidential to perform in accordance with, and exercise its rights pursuant to, the Loan Agreement.

   h. Debtor shall maintain adequate software (including but not limited to any necessary licenses or support) that may be necessary for the Debtor to properly and adequate bill its accounts receivables.

4. An event of default under this Order ("<u>Event of Default</u>") shall include any of the following:

   (a) The occurrence of an Event of Default under the Loan Documents;

7

    (b)    Debtor's failure to perform or satisfy any of the terms, conditions, or covenants of this Order;

    (c)    Debtor's filing, support, or confirmation of a Chapter 11 plan of reorganization in this bankruptcy case that does not provide for the prior full satisfaction of the obligations owed by Debtor to Presidential on or before the "effective date" of the plan, unless otherwise agreed to in writing by Presidential;

    (d)    The foreclosure, liquidation, levy, or similar act by any party with respect to any material portion of the collateral securing the Debtor's obligations to Presidential;

    (e)    The dismissal of the Debtor's bankruptcy case or the conversion of the Debtor's chapter 11 bankruptcy case to a case under another chapter of the Bankruptcy Code;

    (f)    The stay, modification, amendment, vacating, or reversal of any term of this Order or the Loan Documents, or any of the rights and acknowledgments conferred thereunder, without the express prior written consent of Presidential;

    (g)    The commencement or continuation of, or voluntary participation by the Debtor in any lawsuit, adversary proceeding, or contested matter against Presidential;

    (h)    The failure of the Court to enter a final non-appealable order granting to Presidential the relief requested in the Motion that is acceptable to Presidential within 30 days of the Petition Date;

    (i)    The failure to meet any obligations of the Debtor;

    (j)    The use of the Cash Collateral Receivables or proceeds from the loans by Presidential other than as set forth herein.

5. Upon the occurrence of an Event of Default, Presidential shall provide Debtor and counsel for Debtor a notice of such Event of Default via email correspondence (the "<u>Default Notice</u>"). Subject to giving Default Notice, all obligations owed by Presidential to Debtor under the Loan Documents shall be terminated immediately and all obligations owed by Debtor to Presidential shall be immediately due and payable.

8

6. Unless expressly agreed otherwise by Presidential, Debtor shall be required to comply with the Budget attached hereto as **Exhibit "A"** (the "<u>Budget</u>") provided however Debtor shall be allowed a fifteen percent (15%) variation of the amounts contained in the Budget. Notwithstanding anything to the contrary herein, Debtor shall be allowed to increase the amounts spent on the items listed in the Budget to the extent Debtor's patient census increases from the average census assumed for the Budget, but only to the extent such increases are reasonable, necessary and ordinary for Debtor's operations due to the increased census.

7. In determining to exercise any rights or remedies as and when permitted under this Order, Presidential shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation and management of the Debtor. Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon Presidential of any liability from any claims arising from the prepetition or post-petition activities of the Debtor or its affiliates in the operation of its business, or in connection with its restructuring efforts.

8. Presidential shall have the right to waive any of the terms, rights and/or remedies provided in this Order or the Loan Documents and shall have no obligation or duty to any other party with respect to the exercise or enforcement of, or failure to exercise any of its rights.

9. Notwithstanding any other provision of this Order, this Order approves the Debtor's acknowledgement and agreement that the Loan Agreement and the security interests held

9

by Presidential in connection with the Loan Agreement are valid, enforceable, perfected and unavoidable under the Bankruptcy Code or any other applicable law.

10. The provisions of this Order shall be binding upon the Debtor, all parties in interest in this bankruptcy case, and their respective successors and assigns, including any trustee appointed as a representative of the Debtor's estate whether under any chapter of the Bankruptcy Code or similar law.  Subject to the entry of a final order on the Motion, the provisions of this Order, the Loan Documents, and any actions taken pursuant thereto, shall survive entry of, and shall govern with respect to any conflict with, any order, including without limitation any order which may be entered confirming any plan of reorganization, converting this Chapter 11 bankruptcy case to a case under any other chapter of the Bankruptcy Code, or dismissing this bankruptcy case.

11. Subject to the terms of this Order, this Order is without prejudice to the rights of Presidential to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents and any other applicable agreement or law.

12. The Debtor shall be allowed to continue to maintain the Lockbox Account and is excused from the requirements of the United States Trustee that may require the Lockbox Account to be closed and a new account opened.

13. Notwithstanding anything herein to the contrary, no proceeds of Cash Collateral Receivables or proceeds from loans made by Presidential to Debtor may be used to (i) object, contest, or raise any defense to the validity, authorization, perfection, priority, extent or enforceability of the indebtedness owed to Presidential existing either before or after the Petition Date or the liens securing said indebtedness; (ii) assert any claims or causes action against Presidential; or (iii) prevent, hinder, or otherwise delay

10

Presidential's assertion, enforcement, or realization of the Cash Collateral Receivables or other collateral securing the indebtedness owed to Presidential, provided however that notwithstanding anything to the contrary herein, Debtor shall have the right to object to any motion for relief from the automatic stay that may be filed by Presidential.

14. This ORDER shall be an interim order, and a final hearing on the incurrence of secured debt and use of cash collateral shall be held on July 23, 2012, at 10:00 a.m. in the courtroom of this court in New Albany, Indiana. If any or all of the provisions of this Order hereafter are stayed, modified, or vacated, or a final order is not requested or granted with respect to the relief requested herein, such stay, modification, or vacation or lack of final order shall not affect (a) the validity of any indebtedness, obligation, or liability incurred by Debtor prior to the effective date of such stay, modification, or vacation, or (b) the validity and enforceability of any security interest, assignment, lien, or priority authorized or created hereby or pursuant to the Loan Agreement.

15. The Debtor's counsel shall serve the Motion and a copy of this Order on all of the following parties: (i) the United States Trustee, (ii) the attorneys for the Presidential, (iii) all creditors known to the Debtor who have or may assert liens against the Debtor's assets, (iv) the Debtor's 20 largest unsecured creditors and (vi) all parties in interest who have filed a notice of appearance.

###

# Saint Catherine Regional Hospital
## Cash Flow Projection

| Inflow | Projected 6/16/2012 | Projected 6/23/2012 | Projected 6/30/2012 | Projected 7/7/2012 | Projected 7/14/2012 | Projected 7/21/2012 | Projected 7/28/2012 | Projected 8/4/2012 | Projected 8/11/2012 | Projected 8/18/2012 | Projected 8/25/2012 | Projected 9/1/2012 | Projected 9/8/2012 | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admissions | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 274 | Assu Base |
| Registrations | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 104 | 1,346 | Base |
| SCRH Physician Group Practice Visits | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 159 | 2,066 | Base |
| E/R Physician Visits | | | | | | | | | | | | | | | |
| Presidential | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 149,514 | 1,943,684 | Base |
| Hospital | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 14,269 | 185,499 | Base |
| Physicians | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 9,043 | 117,559 | Base |
| E/R Physician Practice Visits | | | | | | | | | | | | | | | |
| **Total Inflow** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **172,826** | **2,246,741** | |
| **Outflow** | | | | | | | | | | | | | | | |
| Hospital/Executive Payroll | 111,919 | 37,728 | 111,919 | 37,728 | 111,919 | 37,728 | 111,919 | 37,728 | 111,919 | 37,728 | 111,919 | 37,728 | 111,919 | 1,009,801 | Base |
| Hospital Taxes | | 53,588 | | 53,588 | | 53,588 | | 53,588 | | 53,588 | | 53,588 | | 321,528 | Base |
| Amerisource (Pharmacy Drugs) | 15,651 | | 15,651 | | 15,651 | | 15,651 | | 15,651 | | 15,651 | | 15,651 | 109,557 | Base |
| Bank of Jackson | | | | | | | | | | | | | | - | |
| Optimed | 15,313 | | | | 15,313 | | | | 15,313 | | | | 15,313 | 61,252 | Base |
| A/P ACHed out automatically | 27,915 | | 8,642 | | 27,915 | | 8,642 | | 6,049 | 21,867 | 8,642 | | 15,313 | 124,985 | True |
| A/P Requirements (breakdown next page) | 32,090 | 22,423 | 24,804 | 125,478 | 32,707 | 22,423 | 24,804 | 125,478 | 22,423 | 32,707 | 27,447 | 125,477 | 22,423 | 640,683 | |
| **Total Outflow** | **202,888** | **113,739** | **161,016** | **216,794** | **203,505** | **113,739** | **161,016** | **216,794** | **171,355** | **145,890** | **163,659** | **216,793** | **180,619** | **2,267,806** | |
| **Positive (Negative) Cash Flow** | **(30,062)** | **59,087** | **11,810** | **(43,967)** | **(30,679)** | **59,087** | **11,810** | **(43,967)** | **1,471** | **26,936** | **9,167** | **(43,967)** | **(7,793)** | **(21,065)** | |

### A/P Requirements (breakdown below)

| | 6/16 | 6/23 | 6/30 | 7/7 | 7/14 | 7/21 | 7/28 | 8/4 | 8/11 | 8/18 | 8/25 | 9/1 | 9/8 | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A.H.M (Dr. Elliot, Sellersburg Lease) | | | | 3,082 | | | | 3,082 | | | | 3,082 | | 9,246 | True |
| AEL Financial (Hyperbaric Chamber Lease) | | | | 2,437 | | | | 2,437 | | | | 2,437 | | 7,311 | True |
| AEL Financial (Ultrasound Lease) | | | | 3,873 | | | | 3,873 | | | | 3,873 | | 11,620 | True |
| AT&T (Phone) | | | | 1,722 | | | | 1,722 | | | | 1,722 | | 5,166 | Estim |
| Bandwidth.com (Internet) | | | | | 617 | | | | | 617 | | | | 1,234 | Estim |
| Carrie Cocklin | | | | 1,200 | | | | 1,200 | | | | 1,200 | | 3,600 | Carri |
| City of Charlestown (Water) | | 2,381 | | | | | 2,381 | | | | 2,381 | | | 7,143 | Estim |
| De Lange Laden | | | | 408 | | | | 408 | | | | 408 | | 1,224 | Estim |
| Duke Energy | | | | 16,038 | | | | 16,038 | | | | 16,038 | | 48,114 | Estim |
| Dyan Sefton (Anesthesiologist) | | | | 24,487 | | | | 24,487 | | | | 24,487 | | 73,461 | Estim |
| E/R Physicians | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 18,480 | 240,240 | Rate |
| Gordon Food Service | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 1,756 | 22,828 | Estim |
| Insight (TV Cable & Internet) | 2,417 | | | 2,417 | 2,417 | | | | | 2,417 | | | | 7,251 | Estim |
| Imperial Credit Corp (Malpractice, Auto & Prop Ins) | | | | 17,559 | | | | 17,559 | | | | 17,559 | | 52,677 | Estim |
| Karl Storz | | | | 4,494 | | | | 4,494 | | | | 4,494 | | 13,482 | Estim |
| Lakeland Bank (PACs Reader) | | | | 2,442 | | | | 2,442 | | | | 2,442 | | 7,326 | True |
| Lincoln Financial Life Insurance (S/T, L/T & Life Ins) | | | | 3,815 | | | | 3,815 | | | | 3,815 | | 11,445 | Estim |
| Logan's Linen | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 2,187 | 28,431 | Estim |
| Neofunds (Postage) | | | | | | | | | | | | | | - | |
| Owens & Minor | | | | | | | | | | | | | | - | |
| Paper/Toner | | | | | | | | | | | | | | - | |
| Parkview Psych (Behavioral Health Referral Service) | | | | 8,333 | | | | 8,333 | | | | 8,333 | | 24,999 | True |
| Presidential (Interest Payment) | | | | 3,500 | | | | 3,500 | | | | 3,500 | | 10,500 | Estim |
| Raynostix (Radiology Maint Service Agreement) | 7,250 | | | 7,250 | | | | | | 7,250 | | | | 21,750 | True |
| RTW (Workers Comp) | | | | 5,199 | | | | 5,199 | | | | 5,199 | | 15,597 | True |
| Stryker | | | | 432 | | | | 432 | | | | 432 | | 1,296 | Estim |
| Susan Matthews (Speech Pathologist) | | | | 487 | | | | 487 | | | | 487 | | 1,461 | Estim |
| Teleradiology Solutions | | | | 3,546 | | | | 3,546 | | | | 3,546 | | 10,638 | Estim |
| Versacom | | | | | | | | | | | 2,643 | | | 2,643 | Paid |
| **Total A/P Requirements** | **32,090** | **24,804** | **24,804** | **125,478** | **32,707** | **22,423** | **24,804** | **125,478** | **22,423** | **32,707** | **27,447** | **125,477** | **22,423** | **640,683** | |