UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **SAINT CATHERINE HOSPITAL OF INDIANA, LLC** ) | |
| ) | **Case No. 12-91316-BHL-11** |
| **Debtor.** ) | |

**VERIFIED EMERGENCY MOTION FOR AN ORDER (I) APPROVING SALE OF CERTAIN OF DEBTOR'S ASSETS; (II) GRANTING AUTHORITY TO RESOLVE LICENSING AND MEDICARE ISSUES; (III) APPROVING DISPOSITION OF PROPERTY OWNED BY SAINT CATHERINE HEALTHCARE, LLC; (IV) APPROVING CESSATION OF ALL OPERATIONS OF THE DEBTOR; AND (V) GRANTING RELATED RELIEF**

Lyen C. Crews II (the "Trustee"), in his capacity as Trustee of Saint Catherine Hospital of Indiana, LLC (the "Debtor"), by and through his undersigned counsel, submits this verified motion (the "Motion") for an Order (I) approving the sale of the Debtor's interest in the Real Estate (as defined below), hospital building, furniture, fixtures, & equipment, licenses, permits, operations, and intellectual property, but not including the Debtor's accounts receivable (the "Assets") to Midwest Center for Foreign Investment, LLC, or a related entity of that company (collectively, "MCFI"), (II) granting MCFI the authority to litigate, appeal, and otherwise resolve the Debtor's issues with respect to its license to operate as a hospital and its participation in the Medicare program, (III) approving the disposition of any interest of the Debtor in the real property owned by Saint Catherine Healthcare, LLC (the "Real Estate"), subject to the approval of the United States Bankruptcy Court for the District of Wyoming, (IV) authorizing the cessation of all of the Debtor's operations, and (V) granting related relief. In support of the Motion, the Trustee respectfully represents as follows.

**I.     FACTUAL BACKGROUND**

    **A.     General Background**.

    1.     On June 19, 2012 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

    2.     An Official Committee of Unsecured Creditors (the "Committee") has been appointed in this case, as well as a patient care ombudsman, pursuant to 11 U.S.C. § 333.

    3.     The Court appointed the Trustee pursuant to 11 U.S.C. § 1104 on November 21, 2014.

    4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    5.     The statutory predicates for relief are sections 105, 363, 365, 1107, and 1108 of the Bankruptcy Code.

    **B.     Debtor's Business.**

    6.     The Debtor is a Delaware limited liability company which operates an acute care health care business at a hospital located in Charlestown, Indiana. As such the Debtor is a "health care business" as that term is defined in § 101(27A).

    7.     The Debtor's assets are comprised primarily of the Debtor's cash, accounts receivable, inventory, furniture, fixtures, & equipment, licenses, and contracts. Saint Catherine Healthcare, LLC ("SCH") is the entity that holds title to the Real Estate.

### C. Procedural History Regarding Sale of the Debtor's Assets.

8. On December 12, 2014, the Court entered an Order (A) Approving Bidding Procedures and Bidding Protections in Connection with Asset Sale and (B) Approving Form and Manner of Notice of Auction and Sale Hearing [Doc 699] (the "Procedures Order").

9. On January 14, 2015, pursuant to the Procedures Order, the Trustee held an Auction to determine the High Bidder and Second Highest Bidder.

10. On January 15, 2015, the Trustee, in consultation with counsel for the Committee and counsel for Gary Barney, Trustee for the Estate of Robert M. Lane, selected RLBB Financial, LLC ("Rialto") as the High Bidder. The Second Highest Bidder was Procure Health, LLC ("Procure Health"). The Highest Bid was an offer to purchase the assets of the Debtor exclusive of accounts receivable and certain other general intangibles for consideration of cash in the amount of $3,000,000.00.

11. People's Choice Hospital, LLC ("PCH"), another bidder identified by the Trustee as a third choice, objected to the approval of Rialto's bid. PCH asserted that certain contingencies in Rialto's offer could not be met in time to ensure a prompt sale.

12. A hearing to approve the sale to the High Bidder occurred on January 16, 2015. Counsel for the Trustee, PCH, and Rialto attended the hearing. The Court did not hear argument on the Motion or the PCH objection. Instead, citing PCH's concerns about contingencies in the Highest Bid, the Court did not approve the Rialto bid for the Debtor's assets at the hearing and directed all interested bidders to re-submit bids free of any material contingencies. The Court further directed that the hearing be continued until Friday, January 23, 2015, at 10:00 a.m. EST.

13. On January 22, 2015, the Trustee filed a Notice of Status of Auction [Doc. 758] stating that Rialto was withdrawing from the bidding process, and that given the status of the remaining bids from PCH and Procure Health, that no bid be accepted because both PCH's and Procure Health's bids did not propose to provide the estate with a greater value than liquidation of the Debtor's assets.

14. On January 23, 2015, the Court held an evidentiary hearing on the Debtor's Motion for Sale [Doc. 659]. After hearing testimony and reviewing exhibits, the Court determined that a sale of the Debtor's assets was preferable to liquidation, a full and fair auction of the Debtor's assets had occurred up to and including the day of the hearing, and the final bid of Procure Health was the highest and best bid for the Debtor's assets.

15. In the weeks following the January 23, 2015 hearing, however, the Trustee heard little from Procure Health. The Trustee did not receive a draft asset purchase agreement from Procure Health until after close of business on February 10, 2015. That agreement was subject to numerous contingencies despite the fact that Procure Health's corporate representative had testified on January 23, 2015 that his offer to purchase the Debtor's assets was free of any such contingencies.

16. During that same time frame, the Debtor's cash flow flagged, and the Trustee reported that a cash infusion would be necessary for the Debtor to continue operations. At the Court's telephonic hearing on February 12, 2015, Procure Health stated that in the absence of a fully negotiated asset purchase agreement in the form submitted to the Trustee, it would not fund ongoing operations of the Debtor, even as a credit against the purchase price. When pressed, Procure ultimately stated that under present circumstances, it would not proceed to closing.

17. On February 17, 2015, the Court held a telephonic conference regarding the sale status. At this conference, the Trustee stated that he was evaluating interest from other parties interested in purchasing various assets of the Debtor and in liquidating said assets.

**D.     Current Status of the Debtor's Operations.**

18. As of February 19, 2015, the Trustee discharged all of the Debtor's patients and has kept operations, primarily billing and collecting accounts receivable, to a minimum since that time.

19. On or about March 10, 2015, the Centers for Medicare & Medicaid Services ("CMS") notified the Trustee of CMS's determination that, since the Debtor had discharged all of its patients, CMS did not deem the Debtor to be a hospital and stated its intent to terminate the Debtor's participation in Medicare. (*See* Exhibit 1).

20. On or about March 12, 2015, the Indiana State Department of Health ("ISDH") commenced administrative proceedings to revoke the Debtor's license to operate as a hospital. (*See* Exhibit 2).

21. Despite the Trustee's extensive efforts to convince CMS to allow him additional time to consummate a sale of the Debtor, CMS has stated that it would only reconsider its position if the Debtor admitted new patients.

22. In light of CMS's directive, the Trustee was exploring options to admit a limited number of patients with funding provided by interested buyers of the Debtor's operations to maintain the Debtor's Medicare participation. On April 7, 2015, however, the Trustee received an Emergency Order from the ISDH banning further admissions to the Debtor. (*See* Exhibit 3).

23. Thus, the Debtor is now in a position wherein it will lose its participation in Medicare if it does not admit patients, but at the same time, is barred by the ISDH from admitting any patients.

5

### E. Status of Current Bids.

24. The Trustee has selected the offer from MCFI to purchase the Assets, followed by cessation of the Debtor's operations, disposition of any interest the Debtor may have in the Real Estate, and liquidation of the Debtor's remaining assets by the Trustee (the "Asset Sale") as its most meaningful sale opportunity. For the reasons stated herein, the Trustee recommends the Asset Sale.

25. The material terms of the Asset Sale are as follows: (1) a $250,000 sales price; (2) a deposit of $200,000 paid by MCFI, according to the terms of the APA (as defined below), prior to closing as a good faith deposit for the Asset Sale; (3) the balance to be paid at final closing in exchange for a transfer of the Assets to MCFI; (4) a transfer to MCFI of the Debtor's right to pursue the retention of the Debtor's participation in Medicare and its license to operate as a hospital with the ISDH; and (5) disposition or relinquishment of any rights the Debtor may have in the Real Estate, subject to the approval of the United States Bankruptcy Court for the District of Wyoming. (*See* Proposed Asset Purchase Agreement (the "APA"), attached as <u>Exhibit 4</u>).

## II. RELIEF REQUESTED

26. By this Motion, the Trustee requests that the Court enter an order authorizing him to: (i) relinquish his interest in the Real Estate; (ii) sell the Assets to MCFI upon the terms and conditions stated in the APA; (iii) grant MCFI the Debtor's right to pursue the retention of the Debtor's participation in Medicare and its license to operate as a hospital with the ISDH; (iv) cease the Debtor's operations as a going concern and commence liquidation of the Debtor's remaining assets.

### III.     ARGUMENT IN FAVOR OF RELIEF REQUESTED

#### A.     Basis for Recommendation of Asset Sale.

27.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have consistently required that such use, sale or lease be based upon a debtor's sound business judgment.  *See, e.g., In re Eagle Picher Holdings, Inc.,* 2005 Bankr. LEXIS 2894, at ¶ 3 (Bankr. S.D. Ohio 2005); *In re Decora Indus., Inc.*, 2002 WL 32332749, *2 (D. Del. 2002); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

28.     The business judgment rule shields a trustee from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtors' management decisions").  Once a trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

29.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).  When applying the 'business judgment' standard, courts show great deference to a debtor's business decisions.  *See In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687 at 8-9 (N.D. Ill. 1989) ("Under this test, the Debtors'

7

business judgment . . . must be accorded deference unless shown that the bankruptcy's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion."); *In re Trans World Airlines.*, 2001 Bankr. LEXIS 267 at *45-50 (Bankr. D. Del. 2001) (describing business judgment rule as "very deferential standard").

30. The Trustee submits that the Asset Sale meets the requirements for a sale pursuant to Section 363(b) of the Bankruptcy Code. As illustrated by the procedural history regarding the sale of the Debtor's assets and the Debtor's operations, the Debtor is not monetarily viable in its current state and sale of the Debtor's assets is necessary to preclude further erosion of the Debtor's value.

31. Further, the consideration set forth in the Asset Sale is fair and reasonable. The Trustee has marketed the Debtor's assets since his appointment over three months ago and has conducted an auction to generate interest in the Debtor. At this point, and particularly in light of the recent actions of the ISDH, the Trustee believes all reasonable means of promoting the sale of the Debtor's assets have been exhausted, and the Asset Sale amounts to the highest and best opportunity to maximize the Debtor's value.

32. The Asset Sale was also negotiated in good faith. The Asset Sale is the result of arms-length negotiation between the Trustee and MCFI.

33. Adequate notice of the proposed Asset Sale also is being provided. The Trustee intends to serve this Motion on the Sixth Master Service List, which will ensure proper notice to all interested parties.

34. Finally, the fact that the Debtor would cease to operate under the Asset Sale does not necessarily mean the City of Charlestown will be without a hospital. Upon information and belief, MCFI intends to operate a hospital on the Real Estate.

**IV.      EMERGENCY RELIEF**

35.     The Trustee seeks approval of this Motion on an emergency basis and will file a motion for expedited relief contemporaneously with this Motion. In light of the steps taken by CMS and the ISDH, the Debtor's rights to participate in Medicare and to operate as a hospital are imminently at risk. If those rights are terminated, the Debtor's value could be materially impacted. As a result, the Debtor submits that time is of the essence with respect to approve of the Asset Sale.

## CONCLUSION

After exhaustive efforts to market and sell the Debtor's assets, the Trustee has concluded in his business judgment that the Asset Sale presents the best means of realizing value for the Debtor's creditors. Accordingly, the Trustee requests that the Court enter an order authorizing him to: (i) relinquish the Real Estate, subject to the approval of the United States Bankruptcy Court for the District of Wyoming; (ii) sell the Assets to MCFI, subject to the terms of the APA; (iii) grant MCFI the Debtor's right to pursue the retention of the Debtor's participation in Medicare and its license to operate as a hospital with the ISDH; (iv) cease the Debtor's operations as a going concern and commence liquidation of the Debtor's remaining assets.

Respectfully submitted,

**DINSMORE & SHOHL, LLP**

*/s/ Ellen Arvin Kennedy, Esq.*
Ellen Arvin Kennedy, Esq.
John M. Spires, Esq.
Dinsmore & Shohl, LLP
250 W. Main Street, Suite 1400
Lexington, Kentucky 40507
Phone: (859) 425-1000
Facsimile: (859) 425-1099
Email:  ellen.kennedy@dinsmore.com
        john.spires@dinsmore.com
**COUNSEL FOR LYEN C. CREWS II, AS
CHAPTER 11 TRUSTEE FOR SAINT
CATHERINE HOSPITAL OF INDIANA, LLC**

## CERTIFICATE OF SERVICE

It is hereby certified that on the 20th day of April, 2015, true and correct copies of the foregoing was served on the Sixth Master Service List Dated April 10, 2015, through (a) the Court's CM/ECF system, (b) electronic mail to an address provided by the person to receive notice, (c) or first-class mail.

*/s/ Ellen Arvin Kennedy, Esq.*
**COUNSEL FOR TRUSTEE**

## **VERIFICATION**

I hereby verify that the foregoing Motion is true and correct to the best of my knowledge and belief.

>  */s/ Lyen C. Crews II*
> Lyen C. Crews II, Chapter 11 Trustee

9571801v1