## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "*Agreement*"), dated this __ day of May, 2015 (the "*Effective Date*"), is made by and among **JAYMED, LLC,** ("*Purchaser*") and **LYEN CREWS**, II in his capacity as Chapter 11 trustee for **SAINT CATHERINE HOSPITAL OF INDIANA, LLC** ("*Seller*"), Purchaser and Seller may each be referred to herein as a "*Party*" or collectively referred to herein as the "*Parties*".

### W I T N E S S E T H:

**WHEREAS**, Seller is or was engaged in the business of providing general hospital and related healthcare services including, but not limited to, medical and behavioral inpatient care, outpatient surgery, emergency care, and outpatient care (collectively, the "*Business*");

**WHEREAS**, the Seller has filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "*Bankruptcy Court*");

**WHEREAS**, subject to the terms and conditions of this Agreement and pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure, Seller desires to sell and assign to Purchaser, and Purchaser desires to purchase from Seller, substantially all of the Business assets of Seller.

**NOW, THEREFORE**, in consideration of the recitals, the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Purchaser and Seller hereby agree as follows:

### ARTICLE I
### PURCHASE AND SALE OF ASSETS

**1.1** **Purchase and Sale of Assets**. At the Closing, Seller will sell, assign, transfer, convey and deliver to Purchaser, free and clear of all liens, claims, options, warrants, charges, security interests, pledges, mortgages or other encumbrances whatsoever and Purchaser will purchase and accept from Seller, on the terms and subject to the conditions hereinafter set forth, all of the rights, title and interests of Seller in and to the following of Seller's assets (all of such assets, properties, rights and interests being hereinafter collectively referred to as the "*Purchased Assets*"):

(a) all furniture, equipment, furnishings, supplies, fixtures, materials, inventory, tools and other tangible personal property owned by Seller as set forth on *Schedule 1.1(a)* (the "*Owned Tangible Property*");

(b) all Intellectual Property set forth on *Schedule 1.1(b)*.

(c) to the extent legally assignable, the contracts of Seller used in the Business which are set forth on *Schedule 1.1(c)* (collectively, the "*Assigned Contracts*");

(d) to the extent legally assignable, all permits of Seller used in the Business, including as set forth on *Schedule 1.1(d)* (collectively, the "**Assigned Permits**");

(e) to the extent available, all books and records relating exclusively to the Purchased Assets, including equipment maintenance and warranty information;

(f) to the extent legally assignable, the rights of Seller to manufacturers' warranties and indemnities to the extent relating to any Purchased Asset, other than warranties and indemnities relating to any Excluded Assets;

(g) the rights or claims of Seller to appeal or otherwise challenge the termination of Seller's Medicare provider agreement and/or Seller's Medicare provider numbers;

(h) to the extent legally assignable, all computer software owned by Seller and used in the Business (the **"Owned Software"**);

(i) all telephone numbers and facsimile numbers;

(j) all assumed names and trade names of Seller; and

(k) all leasehold and other rights of Seller to the Business premises.

**1.2** **Excluded Assets**. Other than the Purchased Assets described in *Section 1.1*, Purchaser expressly understands and agrees that it is not purchasing or acquiring, and Seller is not selling or assigning, its cash and accounts receivable (the "**Excluded Assets**").

**1.3** **Assumed Liabilities.** Purchaser shall assume and agree to pay, perform and discharge when due the following liabilities and obligations:

(a) all liabilities and obligations arising under or relating to the Assigned Contracts; and

(b) all other liabilities and obligations arising out of or relating to Purchaser's ownership or operation of the Purchased Assets on or after the Closing.

## ARTICLE II
## PURCHASE PRICE; CLOSING

**2.1** **Purchase Price**. The purchase price for the Purchased Assets is two hundred fifty thousand DOLLARS ($250,000) (the "*Purchase Price*"), plus the assumption of the Assumed Liabilities. Simultaneous with the execution of this Agreement Purchaser shall deposit with Lyen Crews, Trustee, as a good faith deposit (the "*Deposit*") the sum of two-hundred thousand dollars ($200,000), which shall be held in trust by Lyen Crews, as Trustee. If the Transactions are consummated in accordance with the terms of this Agreement, the Deposit will be applied against the Purchase Price. If this Agreement is terminated because the Bankruptcy Court does not approve the Agreement or the sale contemplated herein, the Deposit shall be

returned to Purchaser upon demand. If the Agreement is terminated for any other reason, the Seller shall retain the Deposit.

**2.2** **Closing**. At Closing the Purchaser shall pay the balance of the Purchase Price by certified check or wired funds. The Closing will take place on the next business day following the date all conditions to the Parties' obligations to consummate the transactions have been satisfied, or as soon as practicable thereafter (the "*Closing Date*"). The Closing shall occur at the offices of Seiller Waterman LLC, 462 S. Fourth Street, Suite 2200, Louisville, Ky. 40202 or by written mutual agreement of the Parties, remotely by the exchange of counterpart signature pages via facsimile or other electronic means (including portable document format).

**2.3** **Allocation of Purchase Price.** The Purchase Price shall be allocated among the Purchased Assets in accordance with the allocation set forth on *Schedule 2.3*, which *Schedule 2.3* shall be prepared and mutually agreed by the Parties no later than the Closing Date. Such allocation schedule shall be prepared in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended. In connection with the preparation of such allocation schedule, the Parties shall reasonably cooperate with each other and provide such information as either of them shall reasonably request. The Parties will each report the federal, state and local and other tax consequences of the Transactions (including the filing of Internal Revenue Service Form 8594) in a manner consistent with such allocation schedule. Allocation of the Purchase Price is intended for tax purposes only and is not intended to have and shall not have any effect on any valuation of assets pursuant to the Internal Revenue Code of 1986 or the distribution or disbursement of monies to secured or unsecured creditors in any Bankruptcy cases or proceedings. The allocation set forth on *Schedule 2.3* shall not apply to determine any credit bid rights if Purchaser or its Affiliates are not the successful purchaser of the Purchased Assets.

**2.4** **Prorations**. All personal property taxes on the Owned Tangible Property for the tax year (the "*Current Tax Year*") in which the Closing occurs shall be prorated. Seller shall be responsible for all taxes for any tax year prior to the Current Tax Year.

**ARTICLE III**
**BANKRUPTCY PROCEEDING**

**3.1** **Bankruptcy Filing**. The Parties acknowledge that Seller has filed for protection under the Bankruptcy Code in Bankruptcy Court. Purchaser and Seller acknowledge that this Agreement, the other transaction documents, the purchase and sale of the Purchased Assets, the assumption and assignment of the Assigned Contracts, with the exception of the terminated Medicare provider agreement, the terminated Medicaid provider agreement, and the license to operate as a hospital in Indiana, and the other transactions are expressly subject to Bankruptcy Court approval. Seller shall file with the Bankruptcy Court a sale motion, together with appropriate supporting papers and notices (collectively, the "*Sale Motion*"), seeking the entry of an order authorizing the Transfer of the Purchased Assets and in accordance with this Agreement and the other Transaction Documents pursuant to Section 363 of the Bankruptcy Code (the "*Sale Order*"). Seller shall use reasonable efforts to obtain entry of the Sale Order as soon as reasonably practicable following the execution and delivery of this Agreement and the other Transaction Documents. The Sale Order shall contain standard bankruptcy sale provisions, including language providing that Purchaser is a purchaser in good faith for fair value within the

meaning of Section 363(m) of the Bankruptcy Code and entitled to the protection of Section 363(m) of the Bankruptcy Code. The Sale Order would also provide that the consideration for the Purchased Assets constitutes reasonably equivalent value and fair consideration. Seller will request that the Sale Order provide the Purchaser is not a successor to Seller and, to the maximum extent permitted by applicable law, will not be subject to successor liability. Upon the entry of the Sale Order, Purchaser shall use commercially reasonable efforts to take all steps necessary to consummate the transactions in accordance with this Agreement.

**3.2** **Appeal**. Seller agrees to seek a provision in the Sale Order waiving any applicable stay under Rule 6004(h) and Rule 6006(d) of the Federal Rules of Bankruptcy Procedure. If the Order does not waive the applicable stay the Closing at the election of the Purchaser will not occur until after the applicable stay period.

**3.3** **Seller's Actions**. From and after the Effective Date hereof, Seller shall not take any action that is intended to reverse, void, modify, or stay the Sale Order, or fail to take any action the intent of which failure to act would result in the reversal, voiding, modification or staying of the Sale Order.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

**4.1** **Authority**. Seller hereby makes the following representations and warranties to Purchaser, that Seller, subject and pursuant to order of the Bankruptcy Court, has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement, and this Agreement constitutes a valid and legally binding obligation of Seller, enforceable against Seller in accordance with its terms.

**4.2** **Brokers' Fees**. No broker, finder, investment banker or other person or entity (including any person now or previously employed by Seller) has been paid or is entitled to any brokerage fee, finders' fee, commission, bonus or other payment in connection with the Transactions contemplated by this Agreement. The parties acknowledge that Westbury Group, LLC ("*Westbury*") had been engaged by Seller to sell the Business as a going concern, and may claim that it is entitled to a fee in connection with the transactions contemplated by this Agreement, even though the Parties in good faith do not consider such a claim to be meritorious. The Purchased Assets are sold by Seller free and clear of any claim from Westbury. Seller, at Seller's sole expense, shall defend and resolve any and all claims of Westbury, and shall indemnify and hold harmless Purchaser, and to the extent necessary provide a defense to Purchaser in connection with any claim alleged by Westbury, whether raised in a law suit or otherwise.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

**5.1** **Organization**. Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of Indiana**,** and has all requisite power and authority to own, operate or lease the properties and assets now owned, operated or leased by it and to carry on its business as currently conducted.

**5.2** **Due Authorization**. Purchaser has all requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder. The execution and delivery by Purchaser of this Agreement and the performance of its obligations hereunder have been duly and validly authorized by Purchaser. No other action on the part of Purchaser is necessary. This Agreement constitutes a valid and legally binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms

## ARTICLE VI
## INTERIM COVENANTS OF SELLER

Until the Closing Date or the sooner termination of this Agreement:

**6.1** **Maintenance and Operation**. Subject to any orders of the Bankruptcy Court, Seller shall use commercially reasonable efforts to maintain the Owned Tangible Property in a manner consistent with the practices during the pendency of the Case or any other Bankruptcy proceedings of Seller.

**6.2** **Access to the Property**. To the extent Seller has access, Seller shall provide Purchaser reasonable access upon reasonable notice and at reasonable times to the Owned Tangible Property for the purposes of conducting inspections, examinations and reviews of all matters pertaining to the Owned Tangible Property; provided that Purchaser shall ensure that any such inspection does not unreasonably interfere with the operation of Seller's normal business operations.

## ARTICLE VII
## CLOSING CONDITIONS

**7.1** **Closing Conditions**. Closing is contingent upon satisfaction of the following conditions:

(a) All representations and warranties of the parties contained in this Agreement shall be true and correct in all material respects as of the Closing.

(b) No court or any other governmental authority shall have issued an order restraining or prohibiting the transactions; no governmental authority shall have commenced or threatened in writing to commence any action or suit before any court of competent jurisdiction or other governmental authority that seeks to restrain or prohibit the consummation of the transactions or impose material damages or penalties in connection with such Transactions.

(c) The Bankruptcy Court shall have entered the Sale Order which shall have become final and non-appealable or contain a waiver of stay under Rule 6004(h) and Rule 6006(d) of the Federal Rules of Bankruptcy Procedure and shall have confirmed the sale of the Purchased Assets described in this Agreement and in accordance with this Agreement to Purchaser by the Seller.

## ARTICLE VIII
## POST-CLOSING COVENANTS

**8.1** **Post-Closing Access**.  Seller and Purchaser each acknowledge that, subsequent to the Closing, each may need physical access to information, documents or computer data in the control or possession of the other, for purposes of (i) concluding the transactions, (ii) pursuing the administration of and legal actions in the Case or other Bankruptcy proceedings of Seller, and (iii) for audits, investigations, compliance with governmental requirements, regulations and requests, and (iv) the prosecution or defense of third party claims.  Accordingly, Purchaser and Seller each agree that, during normal business hours they will make available to the other and its representatives, including its counsel and accountants, commercially reasonable access to, and the right to make copies of, such documents and information as may be reasonably available relating to the Purchased Assets and will also grant access to the physical facilities containing such documents and information.

**8.2** **Records After the Closing**.  After the Closing, Purchaser shall keep and preserve all documents, computer data, and other records and information of Seller existing as of the Closing and which constitute a part of the Purchased Assets delivered for a period of five (5) years, or longer if required to do so under applicable federal or Indiana Law.  In the event that any patient medical records remain at Seller's business facility following Closing, Purchaser shall comply with all patient privacy and other applicable laws.

**8.3** **Further Assurances**.  From time to time at or after the Closing, each of the Parties hereto shall, without further consideration, execute and deliver or cause to be executed and delivered to the other Parties such additional instruments, and shall take such other action as the other Parties may reasonably request to carry out the transactions.

## ARTICLE IX
## TERMINATION

**9.1** **Right of Termination**.  Subject to the provisions of this Agreement, this Agreement may be terminated at any time prior to the Closing as follows:

(a) by the mutual agreement of Purchaser and Seller; and

(b) by either Party if the Bankruptcy Court determines not to enter the Sale Order.

## ARTICLE X

## ACCOUNTS RECEIVABLE

**10.1** **Separate Agreement**.  At the Trustee's discretion, Seller and Purchaser shall enter into a separate agreement between the parties to address the collection of Seller's accounts receivable.  The agreement will provide, among other things, that Purchaser, in good faith, will attempt to collect Seller's accounts receivable and will receive a fee equal to 10% of the amounts collected by Purchaser.

# ARTICLE XI

## MEDICAL RECORDS

**11.1** **Separate Agreement**.  At the Trustee's discretion, Seller and Purchaser may enter into a separate agreement between the parties in which Purchaser will serve as custodian of the Debtor's patient medical records.

## ARTICLE XII
## MISCELLANEOUS

**12.1** **Fees and Expenses**.  Each Party will pay its own fees, expenses and disbursements and those of its agents, representatives, financial advisors, accountants and counsel incurred in connection with the execution, delivery and performance of this Agreement and any amendments thereto.

**12.2** **Amendments, Waivers, Etc**.  This Agreement may not be amended, changed, supplemented, waived or otherwise modified except by an instrument in writing signed by Purchaser and Seller.

**12.3** **Assignment**.  Except in connection with Article IX above, Purchaser shall not have the right to assign this Agreement, other than that Purchaser may assign its rights under this Agreement to any affiliate thereof but such assignment shall not relieve Purchaser of its obligations hereunder.  Subject to the preceding sentences, this Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective successors and permitted assigns.

**12.4** **Entire Agreement**. This Agreement, including the Exhibits and Schedules attached hereto and thereto, embody the entire agreement and understanding between the Parties relating to the subject matter hereof and thereof and supersede all prior and contemporaneous agreements, understandings, representations and warranties, both verbal and written, relating to such subject matter.  There are no representations, warranties or covenants by the Parties hereto relating to such subject matter other than those expressly set forth in this Agreement.

**12.5** **No Third Party Beneficiaries**.  This Agreement is not intended to be for the benefit of, and shall not be enforceable by or confer any legal or equitable right, benefit, or remedy of any nature on any Person who is not a party hereto.

**12.6** **Governing Law; Venue**.  Except to the extent governed by Bankruptcy Law, this Agreement and all disputes hereunder shall be governed by and construed and enforced in accordance with the internal laws of the State of Indiana, without regard to principles of conflict of laws, and without reference to any rules of construction regarding the party responsible for the drafting of this Agreement.  The Bankruptcy Court shall have exclusive jurisdiction of any action or proceeding relating to, or arising under or in connection with, this Agreement.  The Parties each consent to personal jurisdiction of the Bankruptcy Court and waive any objection to the Bankruptcy Court's jurisdiction.  Any action or proceeding not subject to the subject matter jurisdiction of the Bankruptcy Court and relating to, or arising under or in connection with, this Agreement and the Transaction Documents shall be instituted in any state court within Clark

County, Indiana, or the federal courts having jurisdiction over such county and the Parties hereby submit to such jurisdiction.

   **12.7** **Severability.** Any term or provision of this Agreement that is illegal, invalid or unenforceable in any situation in any jurisdiction shall not affect the legality, validity or enforceability of the remaining terms and provisions of this Agreement or the legality, validity or enforceability of the offering term or provision in any other situation or in any other jurisdiction.

   **12.8** **Headings**.  The name assigned this Agreement and the section captions and headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

   **12.9** **Counterparts; Facsimiles**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one instrument.  Each counterpart may consist of a number of copies each signed by less than all, but together signed by all, the parties hereto.  A signed copy of this Agreement delivered by facsimile, email or other electronic means shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

   IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed as of the Effective Date.

**PURCHASER:**

**JayMed LLC**

By:
Jayesh Sheth, M.D. , managing member

**SELLER:**

**SAINT CATHERINE HOSPITAL, LLC.**

By:
　Lyen Crews, Trustee

A-9

## **EXHIBIT A**

**FORM OF BILL OF SALE AND ASSIGNMENT**

*[See attached]*

# BILL OF SALE

This BILL OF SALE  (this "**Bill of Sale**"), dated  May _____2015 (the "**Effective Date**"), is by and among SAINT CATHERINE HOSPITAL OF INDIANA, LLC., an Indiana company ("**Seller**"), and **JayMed, LLC** ("**Purchaser**").

This Bill of Sale is being delivered pursuant to that certain Asset Purchase Agreement dated as of [  ], 2015 (the "**Purchase Agreement**"), by and among Seller and Purchaser, pursuant to which, among other things, Seller has agreed to sell certain of its assets to Purchaser, including those set forth on Exhibit A, attached hereto and made a part hereof (the "Purchased Assets").

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth in the Asset Purchase Agreement, and for other good and valuable consideration (including without limitation the Purchase Price), the receipt and sufficiency of which are hereby acknowledged,

1. Seller does hereby transfer, sell, assign, convey and deliver to Purchaser all of Seller's right, title and interest in and to the Purchased Assets, to have and to hold the same unto Purchaser, its successors and assigns, forever.

2. Assignment and Assumption. Seller hereby transfers, sells, assigns, conveys and delivers to Purchaser all of Seller's right, title and interest in and to the Assigned Contracts, Assigned Permits and Assumed Liabilities.

3. Purchase Agreement Terms.  This Bill of Sale shall be subject to the representations, warranties, covenants and other terms and conditions of the Purchase Agreement, which are incorporated herein by reference.  In the event of any conflict or inconsistency in the terms of this Bill of Sale and the Purchase Agreement, the Purchase Agreement shall in all cases govern and control.

IN WITNESS WHEREOF, Seller has duly executed and delivered this Bill of Sale as of the Effective Date.

SELLER:

**SAINT CATHERINE HOSPITAL, LLC.**

By: _____
Name:_____
Title:_____

## Schedule 1.1(a)
**Owned Tangible Property**

Attached and subject to additions after inventory taken prior to Closing.

4849389v2

Saint Catherine Regional Hospital
Property, Plant and Equipment

| Date | Description |
|---|---|

### COMPUTER EQUIPMENT   1168.000
| | |
|---|---|
| 07/01/06 | Battery back up |
| 08/31/06 | Firewall  CDW |
| 02/07/07 | Dell Computer |
| 05/04/07 | Identicard |
| 10/31/07 | Lenovo - Computers |
| 11/14/07 | Dell Marketing LP |
| 01/31/11 | Beckman Coulter Lab Comp Sys Repair |
| 08/31/11 | Computer Battery |
| 03/01/13 | Novarad Equipment |

### MOVEABLE EQUIPMENT:
| | |
|---|---|
| 08/31/06 | Xray Shelving |
| 09/30/06 | Warmer for Surgery |
| 10/31/06 | Surgery Instruments |
| 11/30/06 | Exam Table |
| 11/30/06 | Exam Table |
| 03/30/07 | Bard Access (Wound Care) |
| 03/31/07 | Karl Storz (Scope Equipment) |
| 05/01/07 | Cardinal Health - surgery equipment |
| 07/01/07 | Bio-Medical Equipment Service |
| 08/23/07 | Armstrong Medical |
| 09/30/07 | CCWL Surgical Equipment Batch |
| 09/30/07 | Labsco - Microscope |
| 10/22/07 | Cardinal Health - CCWL scopes |
| 10/22/07 | Medline Industries - CCWL Furniture |
| 10/31/07 | Medline Industries - CCWL Furniture |
| 10/22/07 | Advanced Preventative Tech - CCWL surg equip |
| 11/07/07 | Cardinal Health |
| 11/13/07 | Medline Industries, Inc. |
| 11/30/07 | Owens & Minor |
| 12/26/07 | Labsco - Microscope (Lab) |
| 12/26/07 | Skytron - OR Table Extension (CCWL) |
| 12/31/07 | Owens & Minor - Spirometry System |
| 12/31/07 | Datascope Corp - ICU Monitor Unit Replacement |
| 01/31/08 | Progressive Health Rehab Asset Purchase |
| 01/29/08 | Medline Industries - Exam Tables (8) |
| 01/31/08 | Owens & Minor - Spirometry System (2) |
| 02/07/08 | Dove Data Products |
| 02/21/08 | Ortho-Clinical Diagnostics |
| 02/25/08 | Cardinal Health |
| 03/17/08 | Ownes and Minor |
| 03/31/08 | Armstrong Medical |
| 03/31/08 | Progressive Health Rehab Asset Purchase |
| 04/30/08 | Copier(Dove Data Products) |
| 04/30/08 | Blood Bank Refrigerator (Fisher Scientific) |
| 04/30/08 | Three EKG machines (Ownes & Minor) |

**Saint Catherine Regional Hospital**
**Property, Plant and Equipment**

| Date | Description |
| --- | --- |
| 04/30/08 | Surgery Instruments--Retractor sets-2 |
| 05/31/08 | Laproscopic scope vm46-0361-45 |
| 05/31/08 | Sugarairtome II Handpiece |
| 05/31/08 | Bench Seating (Medline) |
| 06/30/08 | Light Source |
| 06/30/08 | Medical Cart BHS |
| 09/07/08 | Holter System |
| 09/30/08 | Cart |
| 10/31/08 | Condensing Unit Kitchen |
| 11/30/08 | Mobile Storage Unit |
| 11/30/08 | EKG MACHINE SC |
| 12/31/08 | Refrigerator |
| 02/28/09 | GAS RANGE KITCHEN |
| 11/30/08 | Novarad - JAN |
| 12/31/08 | Novarad - JAN |
| 02/28/09 | NOVARAD- FEB |
| 03/01/09 | Telementry Datascope Unit |
| 04/30/09 | Printer hep20214 |
| 04/30/09 | Printer hep20214 |
| 04/30/09 | McKernan Fundus Grasper |
| 04/30/09 | Bullet Nose Grasper Diamond |
| 05/31/09 | Med/Surg Beds - (4) |
| 05/31/09 | Surgery Graspers |
| 05/31/09 | Surg Inst small frag set |
| 06/30/09 | Reclining Chair |
| 06/30/09 | Reclining Chair |
| 06/30/09 | Reclining Chair |
| 06/30/09 | Reclining Chair |
| 07/31/09 | Sleep Lab furniture |
| 04/30/10 | Calibrators for Radiology |
| 04/06/10 | Seimens Secondary Cooling Pump |
| 09/08/10 | Video Surveilance Equipment |
| 07/31/11 | TVs in patient rooms |
| 12/01/12 | Capitalizing ABG Analyzer for Lab |

**PHYSICIAN GROUP ASSETS:**

| Date | Description |
| --- | --- |
| 10/31/08 | Equipment Physician Office |
| 09/30/09 | Cryo Tank & Canister |

## Schedule 1.1(b)

## Intellectual Property

To the extent owned and transferable by the Debtor, all copyrights, trademarks, patents, and any and all types of intellectual property rights.

4849389v2

**Schedule 1.1(c)**

**Assigned Contracts**

None

## Schedule 1.1(d)

**Assigned Permits**

None

4849389v2

## **Schedule 2.3**

### **Allocation of Purchase Price**

To be completed prior to Closing.

9632832v1

4849389v2