**SO ORDERED: May 8, 2015.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SAINT CATHERINE HOSPITAL OF INDIANA, LLC | ) ) | |
| | ) | Case No. 12-91316-BHL-11 |
| Debtor. | ) | |
| | ) | |

## ORDER (I) APPROVING SALE OF CERTAIN OF DEBTOR'S ASSETS; (II) GRANTING AUTHORITY TO RESOLVE LICENSING AND MEDICARE ISSUES; (III) APPROVING DISPOSITION OF PROPERTY OWNED BY SAINT CATHERINE HEALTHCARE, LLC; (IV) APPROVING CESSATION OF ALL OPERATIONS OF THE DEBTOR; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**")[1] [Docket No. 874] dated April 20, 2015 of Lyen C. Crews II, in his capacity as Trustee (the "**Trustee**") of Saint Catherine Hospital of Indiana, LLC (the "**Debtor**") pursuant to sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014, (I) approving the sale (the "**Asset Sale**") of the Debtor's interest in the Real Estate (as defined in the APA), hospital building, furniture, fixtures, & equipment, licenses, permits, operations, and intellectual property, but not including the Debtor's accounts receivable (the "**Assets**") to JayMed, LLC, an affiliate of Midwest Center for Foreign

---

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Sale Motion.

Investment, LLC (the "**Buyer**" or "**MCFI**"), (II) granting MCFI the authority to litigate, appeal, and otherwise resolve the Debtor's issues with respect to its license to operate as a hospital and its participation in the Medicare program, and (III) granting related relief. In support of the Motion, the Trustee respectfully represents as follows; and all parties in interest having been heard, or having had the opportunity to be heard; and this Court having reviewed and considered the Sale Motion, and the arguments of counsel made, and the evidence adduced, at a hearing on the Sale Motion; and upon the record of that hearing, and this chapter 11 case and proceeding, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**

A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction and Venue</u>. The Bankruptcy Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    <u>Final Order</u>.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Bankruptcy Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

D.      Statutory Predicates. The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 363 and 365, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007 and 9014.

E.      Notice. Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Asset Sale, the hearing on the Asset Sale, and the entry of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the hearing thereon, or the entry of this Order is necessary or shall be required.

F.      Opportunity to Object. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

G.      Title in the Assets. The Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

H.      Business Justification. The Trustee has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the Asset Sale and sell the Assets under section 363 of the Bankruptcy Code. Such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, the estate, the creditors and all other parties in interest. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Assets if the Asset Sale is not consummated quickly; (ii) the offer from  the Buyer constitutes the highest or otherwise best offer for the Assets; (iii) a sale to the Buyer will present the best opportunity to realize the value

of the Debtor and to avoid decline and devaluation of the Debtor's business; and (iv) unless the Asset Sale is concluded expeditiously as provided for in the Sale Motion, potential creditor recoveries may be substantially diminished. Entry of an order approving the Asset Sale to the Buyer and all provisions thereof is a necessary condition precedent to the Buyer consummating the Asset Sale.

I.      Opportunity to Bid. The Trustee and his professionals marketed the Assets and conducted the marketing and sale process as set forth in the Sale Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

J.      Highest or Otherwise Best Offer. The total consideration provided by the Buyer for the Assets is the highest or otherwise best offer received by the Debtor.

K.      Good Faith Purchaser. The offer from the Buyer has been negotiated by the Debtor and the Buyer in good faith, at arm's length and without collusion or fraud. The terms and conditions of the offer, including the total consideration to be realized by the Debtor, is fair and reasonable, and the offer is in the best interest of the Debtor, the creditors and the estate. The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale and assignment of the Assets.  The Buyer's offer is not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n). The Debtor and the Buyer have not engaged in any conduct that would cause or permit the offer or the consummation of the Asset Sale to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code. The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code. The Buyer will be acting in good faith in consummating the Asset Sale at any time on or after

4

entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). The Buyer is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

      L.     <u>Certificate of Service</u>. As evidenced by the certificates of service filed with the Bankruptcy Court: (1) proper, timely, adequate and sufficient notice of the Sale Motion and the hearing thereon has been provided by the Debtor: (2) such notice was good, sufficient and appropriate under the particular circumstances; and (3) no other or further notice of the Sale Motion, the proposed Sale, or hearing on the Sale is or shall be required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

      M.     <u>Corporate Power and Authority</u>. Subject to entry of this Order, the Trustee and the Buyer have full corporate power and authority to complete the Asset Sale and to perform all of their respective obligations thereunder, and the sale and assignment of the Assets has been duly and validly authorized by all corporate authority necessary to consummate the Asset Sale. No consents or approvals, other than as expressly provided for in the entry of this Order, are required by the Trustee to consummate the Asset Sale.

      N.     <u>Free and Clear</u>. The Debtor is the sole and lawful owner of the Assets. The sale and assignment of the Assets to the Buyer or its designee will be, as of the closing, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Buyer or its designee with all rights, titles and interests of the Debtor to the Assets free and clear of all Liens (as defined in <u>Paragraph 13</u> of this Order) other than those subject to the payment waterfall provided in <u>Paragraph 16</u> below. The Buyer would not have submitted an offer to acquire the Assets if the sale of the Assets were not free and clear of all Liens, or if the Buyer

would, or in the future could, be liable for any such Liens. A sale of the Assets other than one free and clear of all Liens would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, and would materially reduce the probability of a successful consummation of the Asset Sale. Therefore, the Asset Sale contemplated by the Buyer's offer is in the best interests of the Debtor, the estate and creditors, and all other parties in interest.

O.      Satisfaction of 363(f) Standards. The Trustee may sell and assign the Assets free and clear of all Liens, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Liens who did not object or who withdrew their objections to the Asset Sale are deemed to have consented to the Sale Motion and sale and assignment of the Assets to the Buyer or its designee pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the Asset Sale ultimately attributable to the Assets in which such holders allege a Lien, in the same order of priority, with the same validity, force and effect that such holder had prior to the Transactions, and subject to any claims and defenses the Debtor and the estate may possess with respect thereto.

P.      No Successor Liability. The Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor other than those liabilities to be expressly assumed under the parties' final APA (the "**Assumed Liabilities**").  The Asset Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtor and/or the

Debtor's estate, there is not substantial continuity between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation, substantial continuation or alter ego of the Debtor or the estate, and the Buyer does not constitute a successor to the Debtor or the estate. Other than the Assumed Liabilities, the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor, including, without limitation, any claims that may be asserted under any federal, state or local law arising from or relating in any way to the operations of the Debtor prior to the Closing of the Asset Sale, and the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall hereby be released and forever discharged from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, assented or unassented, fixed or contingent, relating to the Asset Sale, and the sale and assignment of the except for liabilities and obligations to be specifically assumed. The Court finds that the Buyer would not have acquired the Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

   Q. <u>No Fraudulent Transfer</u>. The Asset Sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Trustee nor the Buyer are or will be entering into the Asset Sale fraudulently.

   R. <u>Fair Consideration</u>. The consideration constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Buyer's offer represents a fair and reasonable offer to purchase the Assets and assume or acquire liabilities under the circumstances of the Debtor's case. Approval of the offer and the consummation of the Asset Sale are in the best interests of the Debtor, the estate, the creditors, and all other parties in interest.

S.      Compliance with Bankruptcy Code. The consummation of the Asset Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the Asset Sale as of the effective date of assignment.

T.      Transactions not a Sub Rosa Plan. The sale and assignment of the Assets outside of a plan of reorganization neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. The Transactions do not constitute a *sub rosa* chapter 11 plan.

U.      Time is of the Essence. Time is of the essence in consummating the Asset Sale. Specifically, the Asset Sale must be approved and consummated promptly in order to preserve the viability of the business subject to the Asset Sale, to maximize the value to the Debtor, the estate, the creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

The Asset Sale is in the best interests of the Debtor and the estate, creditors, interest holders and all other parties in interest herein; and it is therefore:

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      Relief Granted. The relief requested in the Sale Motion is granted in part and denied in part, as stated herein.  The findings of fact set forth above and conclusions of law

stated herein shall constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2.      <u>Objections Overruled</u>. All objections and responses to the Sale Motion, this Order or the relief granted herein that have not been overruled, withdrawn, waived, settled or otherwise resolved, are hereby overruled and denied.

3.      <u>Notice</u>. Notice of the Sale Motion, the Auction, the Sale Approval Hearing and the Asset Sale was fair and equitable under the circumstances and complied in all respects with section 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007.

4.      <u>Approval</u>. The Buyer's offer, as stated in the APA filed on May 8, 2015 at Docket No. 905, is hereby approved and authorized in all respects, and the Trustee is hereby authorized and empowered and directed to enter into a transaction for the sale of the Assets to the Buyer and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of same.

5.      <u>Good Faith Purchaser</u>. The Buyer is a good faith purchaser of the Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment or

obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order.

6.     <u>Section 363(n) of the Bankruptcy Code</u>. The Asset Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

7.     <u>Authorization of Performance by the Trustee</u>. The Trustee is authorized to fully perform under, consummate, and implement the terms of the Buyer's offer together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Buyer's offer and this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Assets.

8.     <u>Allocation by the Purchaser</u>. The Buyer is hereby authorized in connection with the consummation of the Asset Sale to allocate the Assets and the Assumed Liabilities among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Assets or the rights under any Assumed Liabilities to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order, and the Trustee shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

9.     <u>Valid Transfer</u>. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, effective as of the closing, (a) the sale and assignment of the Assets and the Assumed Liabilities by the Debtor to the Buyer upon the terms and conditions of the APA to be reached between the parties shall constitute a legal, valid and effective transfer of the Assets and the Assumed Liabilities notwithstanding any requirement for approval or consent by any persons and vests the Buyer or its designee with all right, title and interest of the Debtor in and to the Assets, free and clear of all liens, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Buyer constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and divests the Debtor of all liability with respect to such Assumed Liabilities.

10.     <u>Free and Clear</u>. Except to the extent specifically provided in the APA to be reached between the parties, upon the Closing, the Trustee shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and assign the Assets and the Assumed Liabilities to the Buyer. The sale and assignment of the Assets and the assignment of the Assumed Liabilities to the Buyer vests the Buyer or its designee with all right, title and interest of the Debtor to the Assets free and clear of any and all Liens, if any, and other liabilities (other than the Assumed Liabilities) of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, if any, to attach only to the proceeds of the sale and assignment of the Assets with the same priority, validity, force, and effect as they now have in or against the Assets subject to the payment waterfall provided in <u>Paragraph 16</u> below. The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Assets free and clear of all Liens. Following the closing, no holder of any Lien on the Assets may interfere with the Buyer's or its

designee's use and enjoyment of the Assets based on or related to such Lien, or any actions that the Trustee may take in its chapter 11 case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Asset Sale or by this Order.

11.    The term "*Liens*" as used herein shall include all valid and properly perfected liens (that are not subject to avoidance), claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, including, without limitation, with respect to the following: (1) any labor agreements; (2) all valid and properly filed mortgages, deeds of trust and security interests that are not subject to avoidance; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of the Debtor; (4) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment of any persons by the Debtor or its respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability, including any theories on product liability grounds or relating

to any employment of any persons by the Debtor; and (8) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other federal, state or local statute.

12. The provisions of this Order authorizing the sale and assignment of the Assets free and clear of Liens, shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13. _Direction to Creditors_. On the closing date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens in the Assets, if any, as such Liens may otherwise exist.

14. _Application of Proceeds_. Upon receipt of the funds paid by the Buyer as consideration for the Assets, the proceeds from the Sale shall go (1st) to repay any funds due and owing to People's Choice Hospital, LLC as required by the Court's _Order Granting Agreed Entry Resolving Emergency Motion for Turnover_ [Docket No. 843], to the extent that such loans have not already been repaid (2nd) to repay Gary A. Barney, the Chapter 7 Trustee of the bankruptcy estate of Robert M. Lane, as a result of a loan from Mr. Barney to the Debtor, (3rd) all remaining proceeds, shall be placed in escrow by the Debtor, and shall be subject to further order of this Court.

15.     <u>Direction to Government Agencies</u>. Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Buyer's offer and this Order. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the Assets from their records, official and otherwise.

16.     <u>Direction to Surrender Possession or Control</u>. All persons or entities, presently or on or after the closing date, in possession or control of some or all of the Assets are directed to surrender possession or control of the Assets to the Buyer or its designee on the closing date or at such time thereafter as the Buyer may request.

17.     <u>Licenses and Permits</u>. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the closing date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtor with respect to the Assets and the Assumed Liabilities, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the closing date. To the extent any license or permit necessary for the operation of the business is determined not to be assumable and assignable, the Buyer may apply for and obtain any necessary license or permit promptly after the closing date. The governmental agency responsible for the issuance of the said licenses or permits is to determine

whether the license or permit is assignable or assumable under the relevant statutory and administrative rules and requirements.

18.     Transfer of Title and Interests. All of the Debtor's interests in the Assets to be acquired by the Buyer shall be, as of the closing date and upon the occurrence of the closing, transferred to and vested in the Buyer or its designee. Upon the occurrence of the closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets including the Assumed Liabilities acquired by the Buyer and/or a bill of sale or assignment transferring indefeasible title and interest in the Assets, including the Assumed Liabilities, to the Buyer or its designee.

19.     Fair Consideration. The consideration provided by the Buyer to the Debtor for the purchase of the Assets and assignment of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

20.     No Successor Liability.   The Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtor or the estate as a result of the consummation of the transactions contemplated by the Buyer's offer or any other event occurring in the chapter 11 cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtor or the estate, (c) deemed to have a common identity with the Debtor, (d) deemed to have a continuity of enterprise with the Debtor, or (e) deemed to be an alter ego or mere continuation or substantial continuation of the Debtor or any enterprise of the Debtor including, without limitation, within the meaning of any foreign,

15

federal, state or local law.  Except as provided in the APA and schedules thereto, the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or the estate including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtor or against an insider of the Debtor, or similar liability, whether known or unknown as of the closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way related to the operation of the Assets prior to closing.

21.     Except for the Assumed Liabilities or as otherwise specifically set forth in the APA, the transfer of the Assets and the Assumed Liabilities to the Buyer or its designee shall not result in (i) the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor, (ii) the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens, or (iii) the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability or responsibility to the Debtor except as is expressly set forth in the APA to be entered into by the parties. In the event that the Buyer elects to be treated as a successor employer under section 3121(a)(1) of the Internal Revenue Code, or makes an election to assume, on an employee by employee basis, immigration-related liabilities with respect to former

employees of the Debtor hired by the Buyer, the Buyer shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

22.    Without limiting the effect or scope of the foregoing, as of the closing date, the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, employment law, de facto merger or substantial continuity, whether known or unknown as of the closing date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the closing date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Assets or the Assumed Liabilities prior to the closing.

23.    Injunction. Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in possession of any of the Assets at any time, trade creditors and all other creditors, holding Liens of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the Assumed Liabilities, the operation of the Debtor's business before the closing date, the Transactions, or the transfer

17

of the Assets and the Assumed Liabilities to the Buyer or its designee, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Buyer, or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Assets. Following the closing date, no holder of a Lien in the Debtor shall interfere with the Buyer's or its designee's title to or use and enjoyment of the Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's case.

24.     The Buyer has not assumed and is not otherwise obligated for any of the Debtor's liabilities other than the Assumed Liabilities and the Buyer has not acquired any of the Excluded Assets (as that term is defined in the APA).  Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the Debtor are hereby enjoined from taking any action against the Buyer or the Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtor other than Assumed Liabilities. All persons holding or asserting any Lien on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or causes of action against the Buyer or the Assets for any liability associated with the Excluded Assets.

25.     No Bulk Sales; No Brokers. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Asset Sale. No brokers' commissions from either

the Debtor or the Buyer or directly from proceeds of the Asset Sale are due to any person or entity in connection with the Asset Sale.

26.    <u>Release and Discharge</u>. Other than the Assumed Liabilities and payment of the Purchase Price, the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor. Upon the closing of the Asset Sale, the Debtor and the estate are deemed to release and forever discharge the Buyer and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Transactions, the sale and assignment of the Assets, except for liabilities and obligations expressly assumed under the APA to be entered into by the parties.

27.    <u>Binding Order</u>. This Order and the APA to be entered into by the parties shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and the Buyer, their respective successors and permitted assigns, including, without limitation, any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets. This Order and the APA to be entered into by the parties shall inure to the benefit of the Debtor, the estate, the creditors, the Buyer and its respective successors and assigns.

28.    <u>No Stay of Order</u>. Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and in furtherance thereof, Bankruptcy Rule 6004(h) is expressly waived. Time is of the essence in closing the Asset Sale referenced herein, and the Trustee and the Buyer intend to close the Asset Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

29.    <u>Lift of Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow the Buyer to deliver any notice required and allow the Buyer to take any and all actions permitted under the Buyer's offer in accordance with the terms and conditions thereof.

30.    <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (b) to decide any disputes concerning this Order and the Buyer's offer, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Buyer's offer and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens and (c) enter any orders with respect to the assumption and assignment of any Assumed Contracts.

31.    <u>Subsequent Plan Provisions</u>. Nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's

case (including any order entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Buyer's offer or this Order.

32. <u>Further Assurances</u>. From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Asset Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title and interest in and to the Assets and the Assumed Contracts.

33. <u>Governing Terms</u>. To the extent this Order is inconsistent with any prior order or pleading in the chapter 11 case, the terms of this Order shall govern. To the extent there is any inconsistency with between the terms of this Order and the terms of the APA between the parties (including all ancillary documents executed in connection therewith), the terms of the APA shall govern.

#####