UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| SAINT CATHERINE HOSPITAL OF INDIANA, ) | |
| LLC ) | **Case No. 12-91316-BHL-11** |
| ) | |
|     Debtor. ) | |
| ) | |

**TRUSTEE'S OBJECTION TO
FOURTH FEE APPLICATION OF GANNOTT LAW GROUP, PLLC**

    Lyen C. Crews II (the "Trustee"), in his capacity as Trustee of Saint Catherine Hospital of Indiana, LLC (the "Debtor"), by and through his undersigned counsel, hereby submits the following Objection to the Fourth Fee Application of Gannott Law Group, PLLC ("Gannott") [DE 1220] (the "Application"):

**INTRODUCTION**

    1.    Through the Application, Gannott seeks compensation in the amount of **$119,378** and reimbursement of **$397.64** in expenses during the period from February 1, 2015 to September 24, 2016 (the "Fee Period"). Gannott also seeks an enhancement of both the award requested in the Application and prior unpaid awards he has received based on the current rates charged by the Trustee's counsel, bringing the total value of the compensation that Gannott seeks across all of his fee applications to **$422,147.79**. Finally, Gannott seeks to apply a carve-out designated for the Trustee's professional fees to $100,000 of his own fees, and also seeks to carve-out a $192,579.75 portion of the $989,738.78 recovered from the Indiana Family and Social Services Administration ("FSSA") to apply to this own fees.

    2.    Although the Trustee believes that Gannott should receive compensation for its services, Gannott is not entitled to fees in the amounts that he claims. First, it is apparent now

that unsecured creditors will receive nothing from the estate in return for their claims. At the time that Gannott performed the work for which it seeks to be compensated, it knew or should have known that its work would not benefit the constituency of the Committee, Gannott's client. Further, even if the Committee did have a stake in the estate, much of the work performed during the Fee Period was related to matters as to which other parties, including the Trustee, had primary responsibility. As a result, Gannott is not entitled to a lodestar enhancement or a carve-out. Also, the carve-out for professional fees was specifically designated for the fees and expenses of the Trustee and his counsel, and no legal authority supports Gannott's request for a carve-out from the litigation recovery against the FSSA.

## STANDARD OF REVIEW OF FEE APPLICATIONS

3.      Section 330 of the Bankruptcy Code permits a Bankruptcy Court to award reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a).

4.      The statute goes on to set forth relevant factors that courts must consider in determining the services for which compensation is or is not warranted:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

>  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
>  (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for --(i) unnecessary duplication of services; or (ii) services that were not—
>  (I) reasonably likely to benefit the debtor's estate; or
>  (II) necessary to the administration of the case.

*Id.*

5. For the reasons set forth herein, Gannott's Application fails to meet the standards set forth in Section 330, and the amounts requested in the Application should be minimized accordingly.

## ARGUMENT

### I. Gannott Has Not Generated a Benefit for the Unsecured Creditors.

6. Gannott's constituency, the unsecured creditors, will not receive anything of value from the Debtor's estate.[1] As evidenced by the Trustee's Motion to Disburse Funds and for Orderly Dismissal of Case [DE 1198], the total of the administrative claims against the Debtor's estate is more than triple the available funds to pay them. While objections to some of those claims are still pending, there is no possibility that any estate funds will remain to pay unsecured creditors.

7. Gannott should have known that any distribution to unsecured creditors was unlikely. Substantially all of the Debtor's assets were sold in May of 2015 for a total of $250,000, [DE 906, 915], leaving the potential recovery from the FSSA as the only significant estate asset, which the Committee knew would not exceed the value of administrative claims

---

[1] The Trustee acknowledges that the unsecured creditors may receive a distribution from any amounts recovered by the Committee on claims pursuant to the Committee's Agreed Motion for Derivative Standing. [DE 1129]. However, according to that Motion, Gannott is to be paid for pursuing those claims from amounts that it recovers on the claims, not from the estate.

3

against the estate. Thus, Gannott should have been aware long before now that the Debtor's unsecured and even priority creditors would not obtain anything on their claims.

8. Courts have held that compensation sought by counsel for a creditors committee is unreasonable where counsel failed to obtain any benefit for unsecured creditors. *Lobel & Opera v. United States Trustee (In re Auto Parts Club)*, 211 B.R. 29, 34-35 (B.A.P. 9th Cir. 1997) (holding that committee counsel's fees should be reduced where counsel failed to scale back its work after it became clear that unsecured creditors would receive nothing); *Kemp, Klein, Umphrey, Endelman & May v. Bankruptcy Estate of Veltri Metal Products, Inc.*, 2005 U.S. Dist. LEXIS 10753 (E.D. Mich. 2005) (holding that reduction of fee award was appropriate where creditors received nothing and services performed were therefore unnecessary). In this case, while substantial efforts have been made to sell the Debtor's assets for the highest possible value, to appropriately wind-down the Debtor, and to review and resolve administrative claims against the estate, those efforts unfortunately will not benefit unsecured creditors.

**II.      Gannott Seeks Recovery for Unnecessary or Duplicative Services.**

9. Even assuming that Gannott's constituency was likely to receive any funds, any award to Gannott should also be reduced because the services Gannott performed were largely unnecessary. Based on a review of Gannott's invoices, most of the time spent during the Fee Period was related to the sale of the Debtor's assets, objections to administrative claims, or objections to the Trustee's proposed settlement with the United States Department of Health and Human Services ("HHS"). As discussed above, none of these services benefitted the Debtor's unsecured creditors. But these services also generally constitute work that Gannott and the Committee were not tasked with.

10. Regarding the sale of the Debtor's assets, Section 363 of the Bankruptcy Code requires "the trustee" to sell a debtor's assets, with court approval, outside of the ordinary course of business. While the Committee's involvement in the sales process was not harmful, that involvement was not necessary and did not benefit unsecured creditors. With respect to claims objections, those objections are primarily the responsibility of the Trustee. *See* 11 U.S.C. § 1106(a)(1) (in conjunction with 11 U.S.C. §§ 704(5), assigning the trustee the obligation to examine proofs of claim and object, if necessary). While other parties in interest may be permitted to object to claims in the abstract, "the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee." Advisory Committee's Notes to Fed. R. Bankr. P. 3007. Thus, in addition to the fact that the services performed by Gannott did not benefit creditors generally, Gannott arguably should not have performed those services even if creditors were likely to recover.

### III. Gannott Is Not Entitled to a Lodestar Enhancement.

11. Gannott seeks a lodestar enhancement of its hourly rate due to its success in this case and delay in payment of its earlier fee awards. Such enhancements are rare and only should be awarded "where counsel accomplishes a substantial recovery for the client that would not have otherwise occurred without his or her efforts." *In re FAH Liquidating Corp.*, 2015 Bankr. LEXIS 190, at *10-*11 (Bankr. D. Del. 2015). Courts generally hold that a performance warranting a lodestar enhancement is seen where creditors achieve full recovery. *Id.* (collecting cases). Thus, in the *FAH* case, the Court denied a request for an enhancement where counsel for a creditors committee performed its tasks successfully but did not obtain any extraordinary recovery.

5

12. As stated above, unsecured creditors will not recover anything in this case. While Gannott's lack of success in this regard is admittedly due in large part to factors beyond the control of counsel, an enhancement should not be granted for creditors committee counsel where a bankruptcy case produces no value for unsecured creditors. Accordingly, Gannott's request for a fee enhancement should be denied.

**IV.   Gannott Should Not Receive Any Carve-Out.**

13. Gannott finally seeks to apply his prior unpaid fee awards and the total amount of any fee awarded pursuant to the Application against (1) a carve-out intended for the professional fees of the Trustee and his counsel; and (2) a carve-out that Gannott asks the Court to create from the $989,738.78 recovered from the FSSA. Because Gannott is not entitled to any carve-out, this request should be denied.

14. First, despite Gannott's claims to the contrary, the professional fee carve-out established by this Court was not intended to compensate Gannott. The Order establishing the carve-out states:

> IT IS FINALLY ORDERED that the Trustee is authorized pursuant to 11 U.S.C. § 363(c)(2)(A), to use cash collateral secured by the liens granted previously and hereby granted to NWSB provided that such use is consistent with the budget attached to the Financing Motion as Exhibit A, as the same may from time to time be amended with the consent of NWSB, which consent shall not be unreasonably withheld, and which includes a carve-out for the professional fees *of the Trustee and his counsel*.

[DE 725 (emphasis added)]. It is unambiguous that this carve-out was intended only for the fees and expenses of the Trustee and his counsel.

6

15. Second, Gannott is not entitled to a carve-out from the funds received from the FSSA. Fee and expense carve-outs are the result of negotiation between administrative creditors and a secured lender. Indeed, that is how the professional fee carve-out described above was created. The Committee cites no authority authorizing a bankruptcy court to create a carve-out from whole cloth out of a recovery for the benefit of the estate. Such a result would essentially elevate Gannott from an administrative creditor to a secured creditor. It would also violate the distribution scheme set forth in Section 726 of the Bankruptcy Code. Finally, even if a fee carve-out were permissible, directing approximately 20% of the remaining assets in this case to pay the fees of Gannott, whose clients have obtained no recovery on their claims, would be inappropriate. Gannott is an administrative creditor that did not negotiate a carve-out; Gannott can only participate in the *pro rata* distribution of the Debtor's assets with other administrative creditors.

**V.    Conclusion**

16. For the foregoing reasons, Gannott is not entitled to a carve-out or lodestar enhancement. Further, while the authority cited herein might warrant reduction of the Application further, the Trustee submits that such a result would be unduly harsh. The Trustee instead submits that the Application should be granted in the amount of $119,378 and reimbursement of $397.64 in expenses, but Gannott should only be permitted a claim against the Debtor's remaining assets, which claim should be paid *pro rata*.

    Respectfully submitted,

    **DINSMORE & SHOHL, LLP**

    */s/ Ellen Arvin Kennedy, Esq.*
    Ellen Arvin Kennedy, Esq.
    John M. Spires, Esq.
    Dinsmore & Shohl, LLP

                    250 W. Main Street, Suite 1400
                    Lexington, Kentucky 40507
                    Phone: (859) 425-1000
                    Facsimile: (859) 425-1099
                    Email: ellen.kennedy@dinsmore.com
                              john.spires@dinsmore.com
                    **COUNSEL FOR LYEN C. CREWS II, AS**
                    **CHAPTER 11 TRUSTEE FOR SAINT**
                    **CATHERINE HOSPITAL OF INDIANA, LLC**

                    <u>**CERTIFICATE OF SERVICE**</u>

It is hereby certified that on the 20th day of October 2016, a true and correct copy of the foregoing was served upon the parties receiving notice through the Court's CM/ECF system.

                    <u>/s/ Ellen Arvin Kennedy, Esq.</u>
                    **COUNSEL FOR TRUSTEE**

10726122